**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | |
|---|---|
| **PRENTISS TATE, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GENERAC POWER SYSTEMS INC.,**<br><br>**Defendant.** | **Case No.:** 3:26-cv-00127-GHD-JMV<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Prentiss Tate ("Plaintiff") brings this Class Action Complaint against Defendant, Generac Power Systems Inc., ("Defendant") individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit on behalf of himself, and all others similarly situated who purchased certain portable generators manufactured and distributed by the Defendant (collectively herein "the Product").

2. Unfortunately, nearly 149,400 Products sold across the country are unfit for their intended purpose due to risk of serious injury or death from burn and fire hazards.[1]

3. On or about April 16, 2026, the CPSC (Consumer Product Safety Commission) issued a recall on certain portable generators manufactured and distributed by the Defendant, due to the potential risk of the fuel leaking from the carburetor when filling the recalled generator with

[1] https://www.cpsc.gov/Recalls/2026/Generac-Power-Systems-Recalls-Portable-Generators-Due-to-Risk-of-Serious-Injury-or-Death-from-Burn-and-Fire-Hazards

gasoline prior to use. Fuel leakage from the portable generators' carburetor can pose a risk of serious injury or death from burn and fire hazards.[2]

4. The Products are manufactured, advertised, sold, and distributed by Defendant or its agents, to consumers, including Plaintiff, across the United States.

5. All of these products were manufactured and by Defendant. The product is sold at Home Depot, Lowe's and other home improvement stores nationwide and online from May 2025 through February 2026 for between $600 and $1,300 depending on the class and the model.[3]

6. Through marketing and sale, Defendants represented that the Products are safe for consumer use. The corporate website proclaims "When your home backup power solution is a Generac portable generator, you can stay secure- and take comfort wherever you go" as a theme for reassuring consumers that they provide safe products.[4]

7. Plaintiff and consumers do not know, and did not have a reason to know, that the Products purchased carried the potential for fire or burn hazard. Consumers expect the products they purchased to be safe and suitable for the designated use.

8. Other manufacturers produce and sell portable generators that do not pose burn and fire hazards, which is evidence that the risk inherent with Defendant's Products is demonstrably avoidable.

9. Feasible alternative formulations, designs, and materials are currently available and were available to Defendants at the time the Products were formulated, designed, and manufactured.

---

[2] *Id*
[3] *Id*
[4] https://www.generac.com/portable-power-solutions/

10. The Defendant's proposed recall solution does not address the underlying cause of the recall or restore confidence that Plaintiff and proposed Class members have regarding the safety of the product.

11. At the time of their purchases, Defendant did not notify Plaintiff, and similarly situated consumers, of the Product's fire or burn hazard through the product labels, instructions, packaging, advertising, or in any other manner, therefore, acting in violation of state and federal laws.

12. Plaintiff purchased the Products, while lacking the knowledge that Products could be dangerous if not deadly, thus causing serious harm to those who use such Products.

13. Because Plaintiff and all consumers purchased the now worthless and dangerous Products under the presumption that the Products were safe, they have suffered losses.

14. As a result of the above losses, Plaintiff seeks damages and equitable remedies.

## PARTIES

15. Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

16. Plaintiff Prentiss Tate is a resident and citizen of Wall, Mississippi. Wall is located within DeSoto County, Mississippi.

17. Generac Power Systems Inc. is a Wisconsin corporation with a principal place of business located at S45W29290 Highway 59, Waukesha, Wisconsin which was, at all material times, conducting business in the State of Mississippi.

## JURISDICTION AND VENUE

18. Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

19. This Court has subject jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Member, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states.

20. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

21. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given that the Defendant has conducted substantial business in this judicial district and in the State of Mississippi.

22. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District, given the distribution and sale of the defective product occurred within the District.

## FACTUAL ALLEGATIONS

23. Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

24. On April 16, 2026, the CPSC issued a recall for twelve (12) models of the Generac Portable sold from May 2025 through February 2026. The item/model numbers of the recalled generators include: G0077210, G0081550, G0076802, G0076722, G0077130, G0081530, G0080620, G0077150, G0076754, G0081540, G0079712, G0080630.

25. One of the recalled portable generators models includes the generator purchased by the Plaintiff, the General Portable Generator with item/model number G0080620.

26. The recalled Products are distributed at Home Depot, Lowe's and other home improvement stores nationwide and online from May 2025 through February 2026 for between $600 and $1,300.

27. At this time, Defendant is offering a free repair and is not offering a refund.[5]

28. Plaintiff purchased the Product as "new" and intended it for ordinary use.

***Defendants' Misrepresentations and Omissions are Actionable***

29. Plaintiff bargained for a Product that was safe to use. Defendant's Products were, and are, unsafe. As a result of the burn and fire risks while using the Product, Plaintiff, and all others similarly situated, were deprived the basis of their bargain given that the Defendant sold them a Product that can fail, causing fuel to leak from the generators carburetor, posing burn and fire hazards. This dangerous fire risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

30. The Products are not fit for their intended use by humans as they expose consumers to a fire hazard. Plaintiff is further entitled to damages for the injury sustained in being exposed to such danger, damages related to the Defendant's conduct, and injunctive relief.

31. Plaintiff seeks to recover damages because the Products are adulterated, defective, worthless, and unfit for ordinary use due to the risk of catching fire.

32. The Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of catching fire affecting the Products.

33. Indeed, no reasonable consumer, including Plaintiff and the proposed Class, would have purchased the Products had they known of the material omissions of material facts regarding

[5] https://www.cpsc.gov/Recalls/2026/Generac-Power-Systems-Recalls-Portable-Generators-Due-to-Risk-of-Serious-Injury-or-Death-from-Burn-and-Fire-Hazards

the possibility of the Products leaking fuel, thereby causing burn and fire hazards.

34. Plaintiff intended to purchase a Product that would be safe for normal use but instead was sold a dangerous with burn and fire hazards.

35. If Plaintiff had been aware of the risk burns and fire in the Products, he would not have purchased the Product or would have paid significantly less.

36. As a result of the Defendant's actions, Plaintiff has incurred damages.

## CLASS ACTION ALLEGATIONS

37. Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

38. Plaintiff brings this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **All persons within the United States who purchased Generac Portable Generators from May 2025 through February 2026 with item/model numbers G0077210, G0081550, G0076802, G0076722, G0077130, G0081530, G0080620, G0077150, G0076754, G0081540, G0079712, G0080630**.

39. This Nationwide Class shall be referred to herein as the "Class."

40. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

41. Excluded from the Class and Sub-classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

42. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily

identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

43. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44. The proposed Class is so numerous that the joinder of all members is impracticable.

45. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

46. **Numerosity: Fed. R. Civ. P. 23(a)(1) –** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Preliminary estimates suggest that 149,400 units are subject to recall. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

47. **Typicality: Fed R. Civ. P. 23(a)(3) –** Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the conduct described herein. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiff are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

48. **Adequacy: Fed. R. Civ. P. 23(a)(4) –** Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all consumers of a defective product posing a fire hazard. Plaintiff will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no antagonistic interest to those of the Class, and Defendant has no defenses unique to Plaintiff.

49. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3) –** A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

50. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin

and prevent Defendant from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

51. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4) –** This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

a. Whether the Product is susceptible to overheating;

b. Whether Defendant's wrongful retention of Plaintiff and Class Members' payments was an act of conversion;

c. Whether Defendant breached its contract with the Plaintiff by failing to refund Plaintiff's payments upon the announcement of the recall;

d. Whether Defendant's retention of Plaintiff and Class Members' payments was a violation of Defendants duty of good faith and fair dealing;

e. Whether Defendant were unjustly enriched as a result of retaining and refusing to refund Plaintiff's and Class Members' payments upon the recall announcement;

f. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

g. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

## CAUSES OF ACTION

## COUNT I
## BREACH OF EXPRESS WARRANTY

52. Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

53. Plaintiff brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide (the "Class").

54. Plaintiff and each Member of the Class formed a contract with Defendant at the time they purchased the Products.

55. The terms of the contract included express warranties created by Defendant through affirmative representations, advertising, packaging, labeling, and marketing of the defective Products.

56. Defendant, through these marketing and advertising efforts, expressly warranted that the Products were safe, effective, and fit for their intended purpose. These warranties became part of the basis of the bargain between Plaintiff, Class Members, and the Defendant.

57. Defendant made these affirmations of quality and safety through product labeling, packaging, and marketing materials. Defendant reinforced and relied upon these warranties by advertising, displaying, and selling the Products to consumers, thereby making its own express representations of the Products' safety and fitness.

58. Plaintiff and the Class Members fulfilled all conditions precedent to Defendant's liability under this contract, including purchasing the Products in reliance on Defendant's representations.

59. Defendant breached its express warranties because the Products were defective because fuel can leak from the carburetor, and presents a serious fire hazard contrary to their

representations. The Products failed to conform to the express affirmations and promises made by the Defendant.

60. Plaintiff and Class Members would not have purchased the Products had they known the true nature of the risks, including the potential for fire hazards, burn injuries and even death.

61. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members suffered and continue to suffer financial damages, injury, and economic losses. They are entitled to compensatory damages, attorneys fees, interest, and any other relief deemed appropriate by the Court.

## <u>COUNT II</u>
## BREACH OF IMPLIED WARRANTY

62. Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

63. Plaintiff brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide Class (the "Class").

64. Defendant is a merchant engaged in the business of manufacturing, distributing, warranting, and/or selling the Products.

65. The Products are goods under the relevant laws, and at all times relevant, Defendant knew or had reason to know of the specific use for which these Products were purchased.

66. Defendant entered into agreements with retailers to distribute and sell the Products to consumers, including Plaintiff and Class Members, for personal and household use.

67. The implied warranty of merchantability, which applies to all sales of goods, means that Defendant warranted that the Products were fit for their ordinary purpose-- namely, to safely provide portable generators without posing unreasonable risks of harm.

68. However, Defendant breached the implied warranty of merchantability because the Products were defective, not fit for their intended use, and posed a risk of having fuel leak from the carburetor during ordinary use creating a fire hazard. As a result, they were unfit for their ordinary purpose.

69. This implied warranty applies to all purchasers of the Products, including Plaintiff and Class Members, because they reasonably relied on Defendant's status as merchants and sellers of safe, functional goods.

75. Privity of contract is not required, as Plaintiff and Class Members are the intended beneficiaries of Defendant's implied warranties. Defendant's warranties were created for the benefit of consumers, including Plaintiff and Class Members.

75. Defendant was on notice of the defects through consumer complaints and the recall of the Products yet failed to address these defects before selling the Products to consumers.

76. Had Plaintiff, Class Members, and other consumers known that the Products posed a burn and fire hazard, they would not have purchased them or would have paid significantly less.

76. As a direct and proximate result of Defendant's breach of the implied warranty, Plaintiff and Class Members suffered and continue to suffer financial harm, injury, and other damages. Plaintiff and the Classes seek all available damages, including compensatory damages, attorneys' fees, interest, and any other relief deemed appropriate by the Court.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

77. Plaintiff incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

78. Plaintiff brings this claim against Defendant on behalf of themselves and the other

Members of the Nationwide Class (the "Classes").

79. Defendant is a merchant engaged in the sale of goods, including the defective portable generators, to Plaintiff and the Class.

80. There was a sale of goods from Defendant to Plaintiff and Class Members, thereby establishing a commercial relationship between Defendant and consumers.

81. As the developer, manufacturer, marketer, distributor, and seller of the defective Products, Defendant impliedly warranted that the Products were merchantable and fit for their intended use.

82. However, contrary to these representations, the Products were defective and unfit for their ordinary use, as they posed a significant risk burn and fire hazards due to potential fuel leak from the generator's carburetor, which was not disclosed to consumers at the time of sale.

83. Defendant breached the implied warranty of merchantability by selling products that were inherently defective and not suitable for their ordinary and intended purpose.

84. Defendant was on notice of this breach, was aware of adverse health and safety risks caused by the potential fuel leak from the generator's carburetor yet failed to take corrective action before selling the Products.

85. Plaintiff and Class Members did not receive the goods as bargained for, as the Products were not merchantable, did not conform to industry standards, and failed to meet the quality and safety expectations of similar goods.

86. Plaintiff and Class Members are intended beneficiaries of the implied warranties, as they reasonably relied on Defendant's expertise and reputation as merchants when purchasing the Products.

87. Plaintiff and Class Members did not alter the Products, and they used them in the

ordinary and intended manner.

88. The Products were defective at the time they left the exclusive control of Defendant, meaning that Defendant bears responsibility for the defect.

89. The Products were defectively designed and/or manufactured, making them unfit for their intended purpose and rendering them non-merchantable under applicable laws.

90. Plaintiff and Class Members purchased the Products without knowing of the latent defect, which was undiscoverable at the time of purchase but existed when the Products left Defendant's control.

91. As a direct and proximate result of the defective Products, Plaintiff and Class Members suffered damages, including, but not limited to, the cost of purchasing the defective Product, loss of use, and other related damages.

92. Defendant attempted to limit or disclaim their implied warranties, but any such disclaimers are unenforceable and void, as a product that poses safety risks cannot be lawfully sold under the implied warranty of merchantability.

93. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT IV
## FRAUDULENT CONCEALMENT

94. Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

95. Plaintiff brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide Class (the "Class").

96. Defendant had a duty to disclose material facts to Plaintiff and Class Members

given their relationship as contracting parties and intended users of the Products.

97. Defendant had superior knowledge about the defective nature of the product at issue, particularly the fire hazard posed by the Products, which made them unfit for ordinary use.

98. During this time, Plaintiff and Class Members were using the Products without knowing of these fire risks, reasonably believing that the Products were safe for use.

99. Defendant knew or should have known about the defect but failed to warn consumers, retailers, or regulators, and continued to sell the Product despite the defect, and either knew or should have known about the risk, particularly if the recall had already been issued.

100. Defendant failed to disclose these material facts with the intent to induce consumers into purchasing the Products, despite the latent defect. This failure constitutes fraudulent concealment as Defendant intentionally withheld critical safety information that, if disclosed, would have affected consumer purchasing decisions.

101. Plaintiff and Class Members reasonably relied on Defendant's failure to disclose, believing that the Products were safe when, in fact, they were not.

102. Had Plaintiff and Class Members known the true risks, they would not have purchased the Products or would have paid significantly less.

103. As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff and Class Members suffered financial losses, including the cost of purchasing defective Products, the risk of harm, and the devaluation of their purchases.

104. Because Defendant acted with willful and malicious intent, punitive damages are warranted to deter future misconduct and punish Defendants for knowingly concealing critical safety information from consumers.

## COUNT V
## UNJUST ENRICHMENT

105. Plaintiff incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

106. Plaintiff brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide Class (the "Class").

107. Plaintiff, and the other members of the Class, conferred a monetary benefit upon Defendant by purchasing the defective Products either directly or through major online or in-person retail outlets. These payments were not gifts or donations but were made in exchange for products that were falsely represented as safe and reliable.

108. Defendant voluntarily accepted and retained these benefits. Defendant manufactured, marketed and distributed the defective Products without adequate warnings of the known defect.

109. The benefit was obtained unlawfully by Defendant distributing a Product prone to having fuel leak from the generator's carburetor, thereby posing burn and fire hazards. Retaining these profits without disclosing the defect or refunding consumers is unjust and inequitable.

110. The Defendant received revenues from the sales of these defective Products at the expense of Plaintiff and the Class, who would not have purchased the Products had they been aware of the defect. The labeling and marketing of the Products by Defendant were misleading and caused direct economic harm and risk of injury to Plaintiff and the Class.

111. Defendant has been unjustly enriched by retaining the revenues derived from the sales of Products. Retention of these revenues is inequitable because Defendant failed to disclose the known risks associated with their products, thereby misleading consumers and endangering their safety.

112. Plaintiff and the members of the Classes seek restitution of the monies conferred upon Defendant as a result of their unjust enrichment. Defendant should be required to disgorge the profits obtained from the sale of the Products and, as such, seek restitution to Plaintiff and the Members of the Class, as ordered by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against the Defendant as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B. For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: May 19, 2026

Respectfully Submitted,

*/s/ Andre R. Bèlanger*
**POULIN | WILLEY | ANASTOPOULO, LLC**
Andre R. Bèlanger (Bar ID. 104077)
Andre.Belanger@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Attorney for Plaintiff and Proposed Class*